## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:  Guidant Corp. Implantable Defibrillators Products Liability Litigation | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to:<br><br>Donald Wright,<br>a Senior Citizen<br>and Handicapped person,<br><br>      Plaintiff,<br><br>v.<br><br>Boston Scientific,<br>a Delaware Corporation; and<br>Guidant Corporation,<br>an Indiana Corporation<br><br>      Defendants. | Civil No. 06-363 (DWF/AJB)<br><br><br><br><br><br>**ORDER** |

Benjamin S. Houge, Esq., Houge Law Office, counsel for Plaintiff.

John Gueli, Esq., Kirsten M. Nelson, Esq., Michael T. Rasnick, Esq., Stuart J. Baskin, Esq., and William A. Haddad, Esq., Shearman & Sterling LLP; and Marianne D. Short, Esq., and Paul J. Robennolt, Esq., Dorsey & Whitney LLP, counsel for Defendant Boston Scientific.

Timothy A. Pratt, Esq., Shook Hardy & Bacon LLP; Boris Feldman, Esq., Caz Hashemi, Esq., Diane M. Walters, Esq., Keith E. Eggleton, Esq., and Meredith E. Kotler, Esq., Wilson Sonsini Goodrich & Rosati; and Joseph M. Price, Esq., Faegre & Benson LLP, counsel for Defendant Guidant Corporation.

**Introduction**

The above-entitled matter came before the Court pursuant to an Amended Motion for Preliminary and Permanent Injunction filed by Plaintiff Donald Wright.[1] Plaintiff has also requested expedited discovery and trial in the matter. In his First Amended Class Action Complaint for Injunctive and Equitable Relief (the "Complaint"), Plaintiff alleges: (1) violations of the Uniform Fraudulent Transfer Act, Minn. Stat. §§ 513.41-513.48; and (2) violations of the Senior Citizen and Handicapped Person Consumer Fraud Act, Minn. Stat. § 325F.71. Pursuant to these statutes, Plaintiff seeks to restrain Defendant Boston Scientific's ("Boston Scientific") merger with Defendant Guidant Corporation ("Guidant") unless Boston Scientific escrows a portion of its purchase offer to Guidant pending resolution of the product liability, consumer fraud, and other litigation asserted against Guidant in this Multidistrict Litigation proceeding, MDL No. 05-1708 (the "MDL"). Boston Scientific and Guidant have filed briefs in opposition to Plaintiff's motion. The MDL Plaintiffs' lead counsel have filed statements that, to some extent, support questions that Plaintiff has raised, yet the MDL Plaintiffs do not join in the motion. For the reasons set forth below, Plaintiff's motion for injunctive relief and his request for expedited trial and discovery are respectfully denied.[2]

---

[1]   As part of this motion, Plaintiff has also moved for summary judgment on several issues. However, the Court previously informed the parties that it would not address Plaintiff's summary judgment motion at this time.

[2]   Plaintiff's counsel has filed exhaustive briefs in this matter that, by the Court's calculation, exceed the word limits of Local Rule 7.1(c) by 26,399 words. Prior to filing these briefs, and before Defendants' counsel even filed their responsive briefs, Plaintiff's counsel submitted a vague request to exceed his briefing limits (*see* Doc. No. 43). The

**Background**

Guidant is an Indiana corporation with its principal place of business in Indianapolis. Guidant develops, manufactures, and markets products that treat cardiac arrhythmias, heart failure, and coronary and peripheral disease. Boston Scientific is a Delaware corporation with its principal place of business in Natick, Massachusetts. Boston Scientific develops, manufactures, and markets medical devices that are used in a wide variety of medical applications, including the treatment of cardiovascular failure and coronary disease.

Plaintiff Donald Wright is an Arizona resident. According to the Complaint, Plaintiff has had approximately seventeen heart attacks, a quadruple bypass operation, three stents implanted into his heart vessels, angioplasty five times, and suffers from high blood pressure and other physical problems. (Complaint at ¶ 5.) Plaintiff received a Guidant PRIZM 2 defibrillator (the "PRIZM 2") on April 29, 2002. (*Id*.) Plaintiff asserts that at the time it was implanted, Guidant was aware that the PRIZM 2 contained life-threatening defects. (*Id*.) Plaintiff maintains that the PRIZM 2 failed and was explanted and replaced on August 9, 2005. (*Id*. at ¶ 6.) Plaintiff contends that he almost died from the complications that resulted from the explant surgery. (*Id*.)[3]

---

Court attempted to contact Plaintiff's counsel by telephone to inquire as to what, specifically, counsel was requesting. Counsel never responded to the Court's telephone inquiry, and the Court never granted permission for Counsel to submit briefing in excess of the 12,000 word limit. If Defendants are so inclined, the Court is willing to entertain an appropriate motion for sanctions as a result of Plaintiff's counsel's total disregard for the Local Rules.

[3]     Plaintiff has a separate lawsuit pending in the MDL litigation,

Plaintiff has brought this action on his own behalf and on behalf of a purported class of senior citizens and handicapped persons who allegedly suffered injury as a result of Guidant's cardiac pacemakers or defibrillators. (*Id*. at ¶ 7.) Plaintiff confirms that this purported class could reach as many as 586,657 members. (*See* Plaintiff's Reply Memorandum to Guidant's Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary and Permanent Injunction at 2.) Plaintiff asserts claims based upon Guidant's alleged concealment of lethal defects in its pacemaker and defibrillator devices.

On December 15, 2004, Guidant and Johnson & Johnson ("J&J") entered into a merger agreement by which J&J would acquire Guidant for $23.9 billion in cash and stock, or approximately $76 per share. However, during May through September 2005, Guidant issued various communications, informing physicians of failures occurring in certain Guidant defibrillator and pacemaker products. The FDA classified some of these communications as recalls, and Guidant also removed other devices from distribution. During the summer and fall of 2005, a number of lawsuits were brought against Guidant, alleging product liability and other claims related to these allegedly defective products.

On November 2, 2005, J&J issued a statement stating that it viewed Guidant's product issues as a material adverse event under the terms of the merger agreement, thus relieving J&J of its obligation to close the merger. On November 15, 2005, Guidant and

---

Civ. No. 06-269 (DWF/AJB), related to the alleged design and manufacturing defects in his PRIZM 2 defibrillator. Plaintiff served extensive discovery requests on Guidant in December 2005 and 2006 related to this lawsuit.

4

J&J announced a revised merger agreement by which J&J would acquire Guidant for approximately $21 billion, or $63.08 per share.

On December 5, 2005, Boston Scientific announced a competing bid to acquire Guidant at a price of approximately $25 billion in Boston Scientific stock and cash, or $72 per Guidant share. A bidding war between J&J and Boston Scientific ensued. Ultimately, on January 25, 2006, Guidant and Boston Scientific announced a merger agreement by which Boston Scientific would acquire Guidant at approximately $80 per share. On January 25, 2006, Guidant terminated the merger agreement with J&J, and paid J&J a termination fee of $705 million. Boston Scientific reimbursed Guidant for the full amount of the $705 million termination fee.

The proposed merger between Boston Scientific and Guidant is subject to shareholder approval and review by the Federal Trade Commission and European Commission. The merger is scheduled to close on April 3, 2006. It is undisputed that after the merger is completed, Guidant will become a wholly-owned subsidiary of Boston Scientific. Guidant's stock will no longer be publicly traded. Former Guidant shareholders will own approximately 37.5% of Boston Scientific after the merger, and the maximum total cash that is potentially due to these shareholders is approximately $15 billion.

The cash consideration due to the shareholders will come from cash on hand, an unsecured financing commitment of up to $14 billion from Merrill Lynch and Bank of America, and a loan and capital infusion from Abbott Laboratories, Inc. ("Abbott"). Boston Scientific expects to pay approximately $3.2 billion of the cash consideration

5

with cash on hand at Guidant and Boston Scientific. In conjunction with the Merger Agreement, Abbott will purchase Guidant's vascular and endovascular businesses for $4.1 billion, and the net proceeds of this sale will pay a portion of the cash consideration to the Guidant shareholders. Abbott has also agreed to loan Boston Scientific $900 million on a subordinated, unsecured basis, and to purchase $1.4 billion of Boston Scientific stock. Boston Scientific will use this $2.3 billion from Abbott to fund part of the cash consideration. The projected revenues, gross profits, and net income show increasing cash flow for the combined entity through 2009. In addition, the combined entity's balance sheets demonstrate assets well in excess of long-term debt.

## Discussion

As a preliminary matter, the Court will not address any of Plaintiff's claims regarding consumer fraud. Plaintiff's consumer fraud claims and his requests for an expedited trial, hearings, and discovery are attempts to circumvent the MDL litigation, and it would be premature and unjust for the Court to allow Plaintiff to jump ahead of the other MDL litigants in this manner. Plaintiff must pursue his consumer fraud allegations in his earlier-filed MDL case, Civil No. 06-269 (DWF/AJB).

Regarding the fraudulent transfer claim that Plaintiff has raised here, Plaintiff alleges that the proposed merger will result in the transfer of $14 billion in cash assets out of Guidant, resulting in an unlawful fraudulent transfer prohibited by Minnesota Statutes §§ 513.44(a)(1) and 513.45(a). Thus, Plaintiff asserts that the merger will prevent Plaintiff and other litigants from recovering for their claims asserted against Guidant in the MDL proceedings. Plaintiff's Complaint seeks a permanent injunction against

6

Boston Scientific's purchase of Guidant or, alternatively, that Boston Scientific allocate up to $24.4 billion to an escrow fund to be held pending the resolution of the MDL lawsuits against Guidant.

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

Defendants assert that Plaintiff cannot seek class-wide relief because no class has been certified. In addition, Defendants contend that the law does not support the preliminary injunctive relief that Plaintiff seeks. Specifically, Defendants assert that Plaintiff cannot prove a likelihood of success on the merits, Plaintiff will not suffer irreparable injury, and that the balance of harms and public interest favor denying Plaintiff's request for injunctive relief.

### A.    Irreparable Harm

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Gelco,* 811 F.2d at 418 (citations omitted). Here, Plaintiff has not demonstrated any threat of irreparable injury if injunctive relief is not granted.

Plaintiff seeks to have money set aside, and to collect damages, for a group of 586,657 senior citizens and handicapped persons who allegedly suffered injury related to Guidant's pacemakers or defibrillators. The relief that Plaintiff seeks is purely monetary in nature. Because post-trial monetary damages would constitute an adequate remedy, injunctive relief is not warranted.

In addition, Boston Scientific acknowledges that under the laws of Indiana, which govern this transaction, Guidant will still exist after the merger and remain liable to the purported class on the consumer fraud claims. (Boston Scientific's Memorandum in Opposition to Plaintiff's Amended Motion for a Preliminary Injunction at 21-22.) The merger will not relieve Guidant from its potential liability to the purported class. Because Plaintiff has not demonstrated that it will be unable to pursue post-merger remedies, to the extent that they are warranted, against Guidant, Plaintiff has not demonstrated irreparable harm.

Moreover, Plaintiff has not demonstrated that the merger will render either Guidant or Boston Scientific insolvent. The MFTA provides that a debtor is insolvent if

8

"the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." Minn. Stat. § 513.42(a). Plaintiff has provided nothing to the Court to support his speculative assertions that the Defendants will be insolvent after the merger occurs. In fact, the financial statements provided by Defendants indicate the contrary. And Plaintiff's attempts to add liabilities to Defendants' balance sheets, based on the unadjudicated, speculative damages at issue in the MDL litigation, are misguided. Plaintiff has offered nothing to the Court to support its argument that these contingent liabilities should be counted against Defendants' assets to render the Defendants insolvent. As aptly noted by the Eighth Circuit, if courts were to allow the value of such potential or contingent liabilities to diminish the face values of assets, every individual or firm that had contingent liabilities greater than net assets would be rendered insolvent—a notion that is plainly absurd. *F.D.I.C. v. Bell*, 106 F.3d 258, 264 (8th Cir. 1997).

As a final matter, the Court also questions Plaintiff's calculation of potential damages, which are based on the alleged 586,657 purported class members and thus questions whether the "irreparable injury" that Plaintiff asserts is realistic. Plaintiff assumes that all members of this enormous purported class, despite having different implanted devices, unknown injuries, and uncertain damages, have suffered the same injuries. This plainly cannot be the case, and seriously calls into question Plaintiff's assertions of "several Billion dollars" of potential exposure.

Because Plaintiff has not established any threat of irreparable harm in the absence of injunctive relief, the consideration of this factor alone is a sufficient basis upon which

9

to deny Plaintiff's request for injunctive relief. However, the Court will address the remaining *Dataphase* factors.

### B.  Likelihood of Success on the Merits

The first Dataphase factor requires that the movant establish a substantial probability of success on the merits of its claim. *Dataphase*, 640 F.2d at 114. Defendants assert that here, there is no likelihood of success on the merits for a variety of reasons. First, Defendants contend that Plaintiff's MFTA claim fails as a matter of law because the MFTA does not apply to the proposed merger transaction because there is no transfer of assets. Second, Defendants assert that even if the MFTA applies, Plaintiff has offered no evidence of a fraudulent or constructively fraudulent transfer. Finally, Defendants contend that the Interpleader Act does not serve as a basis for the injunctive relief that Plaintiff seeks.

The Court need not reach the issue of whether a "transfer of assets" occurred, thus triggering application of the MFTA. Even assuming that a transfer of assets occurred, Plaintiff has not offered any evidence that any such "transfer" could be deemed fraudulent or constructively fraudulent.

First, as noted above, Plaintiff has not demonstrated that the merger will render Defendants insolvent. Second, Plaintiff is misguided in his assertions that the merger is constructively fraudulent because Guidant is not receiving a reasonably equivalent value in exchange for the transfer, and because its remaining assets after the merger will be unreasonably small in relation to its business. Minn. Stat. § 513.44(a)(2). As noted above, Guidant's assets before the merger will remain after the merger. Plaintiff has not

10

demonstrated that Guidant's shareholders are not receiving a reasonably equivalent value in exchange for their shares of Guidant stock. Plaintiff has not offered any evidence to indicate that there is a lack of equivalence.

Finally, Plaintiff has not demonstrated that the so-called "transfer" was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Minn. Stat. § 513.44(a)(1). In determining whether actual intent exists, courts may consider a variety of factors, including whether:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. § 513.44(b). Here, Plaintiff has not established that this merger bears any of these "badges of fraud."

Finally, the Court finds that the Interpleader Act, 28 U.S.C. § 1335, does not serve as a basis for the injunctive relief sought by Plaintiff. "Interpleader is a procedural device whereby a party holding money or property concededly belonging to another may join in

11

a single suit two or more parties asserting mutually exclusive claims to the fund." *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1141 (8th Cir. 1976).

Here, because the claims of Plaintiff and the putative class have not yet been adjudicated, and because any claim of Guidant shareholders to the amount that Plaintiff seeks to interplead has not matured, there is no basis for an interpleader action. Moreover, no one is asserting "mutually exclusive" claims to the same property. For these reasons, the interpleader action cannot proceed.

### C. Balance of Harms

The next *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant. *Dataphase*, 640 F.2d at 114. Here, the harm to Defendants and their shareholders would likely be great if the injunction were to issue. Defendants would have to sequester and thus be deprived of the use of billions of dollars, with Plaintiff unable to post security to protect Defendants from the harm that Defendants could incur. At a minimum, the merger would likely be delayed; but ultimately, the merger could be scrapped. Defendants could suffer serious financial harm that could not be compensated, considering all of the costs that Defendants have likely incurred in crafting this merger. On the other hand, Plaintiff (and the purported class of plaintiffs) will suffer no harm, as they still will be able to pursue their claims for money damages against Defendants. Because the Court finds that the harm to Defendants significantly outweighs the harm to Plaintiff, this factor weighs strongly against issuance of an injunction.

### D.     Public Interest

The final *Dataphase* factor to be considered by a court is whether injunctive relief is in the public's interest. *Dataphase*, 640 F.2d at 114. Here, the public interest also weighs strongly against injunctive relief. To allow for injunctive relief here would interfere with a multi-billion dollar merger of two companies, such merger which is the product of arm's-length bargaining. The public interest would not be served by allowing the mere presence of unadjudicated lawsuits to hold up a merger.

Because the Court finds that none of the *Dataphase* factors weighs in favor of injunctive relief, Plaintiff's Motion for Entry of a Preliminary Injunction is denied.

### Conclusion

Plaintiff's counsel has taken a peculiar approach to this litigation. Plaintiff's counsel argues strenuously that the expedited discovery, hearings, and trial that he requests are justified by the health and welfare of the multitudinous class of aging and ailing litigants that he purportedly represents. Yet, Plaintiff's counsel has submitted briefs to this Court that are loaded with inflammatory, conclusory, and speculative statements about Guidant's potential liability in this matter. This inciteful language is beyond the bounds of zealous advocacy, inappropriate in the context of sophisticated litigation, and unprecedented in this Court's experience on the federal bench. The Court wonders why an attorney who purports to be gravely concerned about the health of his client (and innumerable potential clients) would aggravate those people's conditions by using such outrageous hyperbole. Plaintiff's counsel has done a great disservice to this Plaintiff and the purported class.

Apart from Plaintiff's counsel's reproachable tactics related to this motion, the Court seriously questions whether this attorney would be an adequate representative of a class of potential litigants, if such a class was legally justified. But the Court will leave that discussion for another day, when it is appropriately before the Court.

## ORDER

1. Plaintiff Donald Wright's Motion for Entry of a Preliminary and Permanent Injunction (Doc. No. 33) is **DENIED**.

2. Plaintiff Donald Wright's request for expedited discovery is **DENIED**.

Dated: March 24, 2006s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court